UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**KITTY McCANN,**

       **Plaintiff,**

  v.                                Case No.: 8:04-cv-2117-T-MSS

**JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**
_____/

## ORDER

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, §§ 405(g) and 1383(c)(3), for judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's claim for Social Security disability benefits under the Act.

The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (the "ALJ"), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

**I. BACKGROUND**

    **A.    Procedural History**

Plaintiff protectively filed an application for disability insurance benefits on January 31, 2002 (T. 16), alleging an onset of disability on March 18, 2001, due

to a combination of medical impairments, including back pain, diabetes, cellulitis of the legs, depression and obesity. (T. 17). Her application was denied initially and upon reconsideration. Plaintiff requested a hearing, which was held on September 3, 2003, before ALJ F.H. Ayer (the "ALJ Hearing"). (T. 30-62). During the ALJ Hearing, Jeffrey Carlisle testified as a vocational expert ("VE"). In a decision dated January 23, 2004, the ALJ denied Plaintiff's claims for benefits. (T. 16-26). The Appeals Council denied review of the decision on July 23, 2004. (T. 5-7). This action for judicial review ensued.

      **B.    Medical History and Findings Summary**

Plaintiff's medical history is set forth in the ALJ's decision. By way of summary, Plaintiff complained of a combination of medical impairments, including back pain, diabetes, cellulitis of the legs, depression and obesity. (T. 17).

At the ALJ Hearing, Plaintiff presented the ALJ with medical records from Plaintiff's treating and examining physicians. After considering the evidence, the ALJ found that although Plaintiff suffered from severe impairments, she did not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (T. 24, Finding Nos.3 and 4).

The ALJ found Plaintiff's allegations were not totally credible (T. 25, Finding No. 5). The ALJ determined Plaintiff retained the residual functional capacity ("RFC") for the period of March 18, 2001 through January 23, 2003, to

perform restricted light work, occasionally lifting and/or carrying twenty (20) pounds, frequently lifting and/or carrying ten (10) pounds, standing and/or walking about six hours in an eight-hour workday, sitting for a total of about six hours in an eight-hour workday, occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling, and never climbing ladders, ropes and scaffolds.  In addition, the ALJ found that Plaintiff required a sit/stand option and had to avoid concentrated exposure to hazards. (T. 25, Finding No. 7).  For the period of January 23, 2004 through the present, the ALJ found that Plaintiff retained the RFC to perform a restricted range of light work, occasionally lifting and/or carrying twenty (20) pound, frequently lifting and/or carrying ten (10) pounds, standing and/or walking about six hours in an eight-hour workday, sitting for a total of about six hours in an eight-hour workday, occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling, and never climbing ladders, ropes and scaffolds.  In addition, the ALJ found that Plaintiff required a sit/stand option, had to avoid concentrated exposure to hazards and must elevate her legs periodically (but never to a point where they would be higher than parallel to the floor). The ALJ additionally concluded that during this subsequent period, Plaintiff was limited to performing simple, repetitive mental tasks and her depression resulted in mild difficulties in maintaining concentration, persistence or pace. (T. 25, Finding No. 7).

     Despite these varied limitations, the ALJ concluded that Plaintiff retained

the ability to perform a restricted range of light work. (T. 24).  The ALJ further concluded that Plaintiff was unable to perform any of her past relevant work. (T. 24-25).  The VE testified during the ALJ Hearing that considering the above limitations, Plaintiff could perform the jobs of "Bench Assembler" and "Cashier." (T. 24).  The ALJ therefore concluded Plaintiff was not disabled under the Act.

## II.  STANDARD OF REVIEW

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if the decision is supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  If there is substantial evidence to support the Commissioner's findings, this Court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner.  See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard.  See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then a remand to the Commissioner for clarification is required.  See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

Against this standard, Plaintiff asserts two points of error: (1) the ALJ erred in failing to give proper weight to the opinions of Plaintiff's treating physicians; and, (2) the ALJ failed to properly consider Plaintiff's complaints of pain.

For the reasons that follow, the Court finds that the ALJ's decision is consistent with the law and supported by substantial evidence.  As such, the Court **ORDERS** that the decision of the Commissioner is **AFFIRMED**.

## III.  DISCUSSION

### A.  Whether the ALJ erred in failing to give proper weight to the opinions of Plaintiff's treating physicians

**Mental Impairments**

Plaintiff first challenges the ALJ's decision to "ignore" the opinion of her treating physician, Dr. Chowallur Dev Chacko, a Board certified psychiatrist and neurologist. Specifically, Plaintiff alleges that there is no good cause to ignore the opinion of Dr. Chacko because there is no other psychiatric medical record in evidence and his opinion is supported by the record.  (Pl. Br. at 8-9). The Commissioner responds that the ALJ did not ignore Dr. Chacko's opinion; rather, he carefully considered it and properly concluded that Dr. Chacko's opinion was not supported by his clinical findings and was contrary to the other evidence of record.

The controlling body of law on the priority of medical evidence provides that the treating physician's opinion may not be rejected absent good cause to the contrary.  Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991).  Furthermore,

5

that good cause finding must be set forth expressly on the face of the ALJ's opinion. "Absent a showing of good cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Commissioner." Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988)(citation omitted); MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir.1986).

The reports of reviewing, non-examining physicians do not constitute substantial evidence on which to base an administrative decision. Spencer on Behalf of Spencer v. Heckler, 765 F.2d 1090, 1093 (11th Cir.1985); Strickland v. Harris, 615 F.2d 1103, 1109-10 (5th Cir.1980); Lamb, 847 F.2d at 703 ("The opinions of non-examining, reviewing physicians, ... when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence"). Further, the good cause required before the treating physicians' opinions may be accorded little weight is not provided by the report of a non-examining physician where it contradicts the report of the treating physician. Johns v. Bowen, 821 F.2d 551, 554 (11th Cir.1987). This priority, known as the "treating physician rule," is borne out of the notion that treating physicians generally have more knowledge of the medical history of their patients and in that capacity are best qualified to assess the nature of the claimed disability. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

Dr. Chacko began treating Plaintiff on October 29, 2001. (T. 280-84).  After this initial visit, Dr. Chacko saw Plaintiff on five different occasions: November 2001; January 2002; July 2002; and, January 2003. (T. 276-79; 374).  According to the ALJ, Plaintiff also visited Dr. Chacko in July 2003; however, no report of this visit is contained in the record.[1]

Dr. Chacko's treatment notes indicate that in October and November 2001 and again in January 2002, he found that Plaintiff had "[n]o work restrictions from a psychiatric standpoint." (T. 277, 279, 284).  In July 2002, Dr. Chacko found that "[p]sychiatrically, patient is doing quite well on her medications" and that "her mood is not significantly depressed now." (T. 276).  In January 2003, Dr. Chacko found that Plaintiff was depressed but stable; exhibited impaired attention and concentration; and, lacked energy. (T. 374).  During the period Dr. Chacko treated Plaintiff, he prescribed only Prozac and Ambien, never varying the dosage amounts. (T. 276-84; 374).

On April 10, 2003, Dr. Chacko completed a Mental Residual Functional Capacity Assessment for Plaintiff ("MRFCA") (T. 375-77).  In the MRFCA, Dr. Chacko opined that Plaintiff was markedly or moderately limited in all areas of understanding and memory, sustained concentration and persistence, social interaction and adaptation. (T. 375-76).

---

[1] During the ALJ Hearing, Plaintiff stated that she visited Dr. Chacko in July 2003 and that he informed Plaintiff that she did not need to come back to see him.  He directed her to remain on Prozac and have her prescriptions filled by her primary care physician.  (T. 47).

7

Upon review of the MRFCA, the ALJ found that it was not supported by Dr. Chacko's clinical findings and treatment notes and concluded that it was contrary to the other evidence of record. (T. 18; 22). The ALJ's decision is supported by the record. As noted above, Dr. Chacko often noted that Plaintiff was doing well "psychiatrically" and able to work. (T. 276, 277, 279, 284). In addition, although Dr. Chacko noted in January 2003 that Plaintiff was depressed, he never adjusted Plaintiff's medications. (T. 374). The ALJ found that Dr. Chacko's opinion was contradicted by the opinion of Dr. Adam Griggs. (T. 22). Specifically, the ALJ noted when Plaintiff visited Dr. Adam Griggs in March 2003, Dr. Griggs found that Plaintiff's depression was controlled with medication (T. 22, citing to T. 378). The ALJ also noted that the state agency physician who considered Plaintiff's psychiatric state, found that Plaintiff did not have a severe impairment. (T. 352-65).

The ALJ expressly set forth good cause for giving less than substantial or considerable weight to the opinion of Dr. Chacko. Further, the ALJ's finding is supported by the record as a whole. As such, the ALJ's decision to reject the recommendation of Dr. Chacko is consistent with the law and supported by substantial evidence.

**Physical Impairments**

Plaintiff claims that the ALJ improperly rejected "all of the medical evidence in this case" when he found Plaintiff is capable of performing light work. (Pl. Br. at

8

9). Specifically, Plaintiff contends that "all of the treating and examining physicians have limited [Plaintiff] to sedentary work, yet the Commissioner finds she can perform light work." (Pl. Br. at 9). The Commissioner responds that Plaintiff's contention is "directly and repeatedly contradicted by the actual record." (Comm. Br. at 6). A review of the record reveals that the Commissioner is correct. Plaintiff was not, in fact, limited to sedentary work by all of the treating and examining physicians of record.

Throughout the relevant period, Plaintiff was found capable of sedentary work by Dr. Stephen Goll (T. 225); light work with some postural and manipulative limitations by Dr. Gerald Romain (T. 258-61); light duty work (although it was suggested that retraining for sedentary work might be more appropriate) by Dr. Lloyd Maliner (T. 179); light work by two state agency physicians, Dr. M. DelaCerna and Dr. Carmen Rodriguez (T. 274, 373); light work on a Functional Capacity Evaluation dated July 23, 2002 (T. 286); and, medium work on a Functional Capacity Assessment dated June 13, 2001 (T. 298). The ALJ properly took into consideration many of the physical (as well as mental) restrictions recommended for Plaintiff. He also noted that Plaintiff's Waddell's testing scores were high in the Functional Capacity Assessment Evaluations performed on June 13, 2001, and July 23, 2002, which is indicative of "symptom magnification and thus likely not a true reflection of the [Plaintiff's] actual capabilities." (T. 21).

The ALJ's ultimate finding that Plaintiff is capable of restricted light work for the period from March 18, 2001 through January 23, 2003, and restricted light work with additional physical, as well as mental limitations from Plaintiff's depression from January 23, 2003, through the present is consistent with the medical record and supported by substantial evidence.

### B. Whether the ALJ erred by failing to consider Plaintiff's complaints of pain

Plaintiff next contends that the ALJ failed to consider Plaintiff's complaints of pain. Specifically, Plaintiff claims that in this case the "medical evidence of the examining and treating doctors . . . is consistent that [Plaintiff's] pain from her orthopedic problems limits her to sedentary work." (Pl. Br. at 11). Plaintiff further claims that there is no suggestion that her complaints are "feigned or based on non-existent conditions." (Pl. Br. at 11). The Commissioner responds that the ALJ properly assessed Plaintiff's pain complaints.

The standard for evaluating subjective evidence of pain in disability cases requires the ALJ to credit a claimant's subjective pain testimony if there is (a) evidence of an underlying medical condition <u>and</u> (b) either (1) objective medical evidence to confirm the severity of the alleged pain <u>or</u> (2) that the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. <u>Mason v. Bowen</u>, 791 F.2d 1460, 1462 (11th Cir. 1986) (emphasis added). This standard also applies to other subjective complaints. <u>Holt v. Sullivan</u>, 921 F.2d 1221 (11th Cir. 1991).

Under the alternate prong of the pain standard, subjective pain testimony which is supported by clinical evidence of a condition that can reasonably be expected to produce the symptoms of which Plaintiff complains is itself sufficient to sustain a finding of disability. This prong requires the ALJ to evaluate the credibility of a claimant's testimony as to pain and to articulate a reasonable basis for rejecting the testimony if it is rejected. Sewell v. Bowen, 792 F.2d 1065, 1068 (11th Cir. 1986). If the ALJ rejects a claimant's testimony regarding complaints of pain, he must articulate "explicit and adequate reasons" for doing so. Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995). Further, the articulated reasons for discrediting a claimant's testimony must be supported by substantial evidence. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). Failure to articulate reasons for rejecting a claimant's testimony requires the testimony be accepted as true as a matter of law. Foote, 67 F.3d at 1562. The same is true if the articulated reasons for discrediting the testimony are not supported by substantial evidence. Hale, 831 F.2d at 1012.

In reviewing the ALJ's decision, the Court must first determine whether, as a matter of law, the ALJ applied the correct legal standard in evaluating Plaintiff's complaints of pain and other subjective symptoms. See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). If the Court finds that the ALJ applied the correct legal standard, the Court must determine whether the ALJ's finding that a claimant does not meet the Mason pain standard is supported by substantial evidence. See Id. The Court may not disturb the ALJ's credibility finding if it is

clearly articulated and supported by substantial evidence.  See Foote, 67 F.3d at 1562.

    Here, the ALJ first determined that Plaintiff had "medically determinable impairments that are reasonably expected to produce the type of pain she alleges."  (T. 21).  Second, the ALJ concluded that Plaintiff's "complaints suggest greater severity than can be shown by the objective medical evidence alone."  (T. 21).  Finally, the ALJ properly turned to 20 CFR § 404.1529(c)(3).  The regulations instruct the ALJ to consider such factors as Plaintiff's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medications to alleviate pain or other symptoms; treatment other than medication for relief of pain or other symptoms; any measures used to relieve pain or other symptoms; and other factors concerning functional limitations and restrictions due to pain or other symptoms.  (T. 21).

    Applying 20 CFR § 404.1529(c)(3), the ALJ concluded that Plaintiff's persistent allegations of pain were "not entirely consistent with the evidence of record, and therefore, not fully credible to the extent she alleged."  (T. 21). The ALJ specifically noted that "[t]here is mention in the file of non-compliance with instructions to lose weight and stop cigarette smoking.  The [Plaintiff] testified that she was unable to get out of bed at least once a week.  The undersigned notes that there is no reference in the file to that severe of a problem."  (T. 21).

In addition, the ALJ discussed Plaintiff's Waddell's testing scores. Again he noted that Plaintiff's Waddell's scores were high in the Functional Capacity Assessment Evaluations performed on June 13, 2001, and July 23, 2002, which is indicative of "symptom magnification and thus likely not a true reflection of the [Plaintiff's] actual capabilities." (T. 21).

In line with these findings, the ALJ properly disregarded some of Plaintiff's complaints and regarded those that were supported by the medical evidence. Based on the medical evidence and Plaintiff's reports, the ALJ found that Plaintiff was capable of performing restricted light work, with certain additional limitations noted during the two periods discussed by the ALJ. Thus, the Court finds that the ALJ properly considered Plaintiff's complaints and his findings are supported by substantial evidence.

## IV.  CONCLUSION

For the reasons set forth above, the Undersigned **ORDERS** that the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to **ENTER** judgment in favor of the Defendant and **CLOSE** this case.

**DONE AND ORDERED** in Tampa, Florida, on this 21st day of March, 2006.

_____
MARY S. SCRIVEN
United States Magistrate Judge